**CONNOLLY BOVE LODGE & HUTZ LLP**

ATTORNEYS AT LAW

WILMINGTON, DE

Arthur G. Connolly, III
Partner
**TEL** (302) 888-6318
**FAX** (302) 658-0380
**EMAIL** AConnollyIII@cblh.com
**REPLY TO** Wilmington Office

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

July 14, 2010

**BY CM/ECF**
The Honorable Michael M. Baylson
U.S. District Court for the Eastern District of Pennsylvania
James A. Byrne Federal Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106-1797

> Re: ***Eppendorf AG, Eppendorf Array Technologies S.A., and Eppendorf North America, Inc. v. Nanosphere, Inc.***, **Civil Case No. 09-CV-504-MMB**

Dear Judge Baylson:

      We write concerning the above captioned matter. Eppendorf has submitted a letter ostensibly to "seek clarification" of the Scheduling Order but which in reality is an attempt to justify its untimely disclosure of a new expert three months after the April 1, 2010 deadline for the disclosure of experts. What Eppendorf fails to note is that this new expert is needed to support Eppendorf's new theory related to injunctive relief and long after such theories and documents should have been disclosed in response to discovery requests.[1]

      With respect to the new theory on injunctive relief, Eppendorf claims that it has just recently become aware of this theory after discussing the issue with its <u>primary</u> contact at Eppendorf, Dr. Sven Bulow, in preparation for his deposition.[2] It is clear that this theory should have been known to Eppendorf and its lawyers prior to filing this lawsuit. Indeed Eppendorf requested injunctive relief in the Complaint—presumably it had a good faith basis for doing so at the time the Complaint was filed. It further should have identified this theory and the witnesses and documents to support it in Eppendorf's Initial 26(a) disclosures.[3] Now, just a few days before expert reports are due and after several key depositions, Eppendorf brings to light a new

---

[1] Nanosphere has objected to the reliance on the new expert, Dr. Becker. Although Eppendorf first disclosed the possible use of this expert on June 28, 2010, Nanosphere promptly objected following the long holiday weekend. The objection was primarily based upon Eppendorf's failure to disclose the expert in accordance with the Scheduling Order. However, we have also indicated that there are likely other grounds for objecting to this particular expert based upon her current representation of Nanosphere competitors and her role as a Managing Director of a Life Sciences investment fund.

[2] Significantly, to find support for such a theory, Eppendorf relies on a document from August 2009 which Eppendorf produced the day before the June 23, 2010 deposition of Dr. Sven Bulow, Eppendorf's Executive Vice President.

[3] Eppendorf failed to disclose the witnesses and/or documents to support this theory in its Supplemental 26(a) disclosures and to date have not updated the disclosures.

The Honorable Michael M. Baylson
July 14, 2010
Page 2

theory (raised for the first time by Eppendorf's counsel on cross examination of its principal, Dr. Bulow and then later in a letter) and has produced some 6500 pages of documents between June 14 and July 6, 2010 presumably to support this new theory.[4]  Eppendorf's counsel has also intimated orally that we can expect to see a new damages theory in the expert reports as well.  To obscure these facts, Eppendorf now comes forward to "clarify" the Scheduling Order to allow it to add an expert three months after the deadline to do so has passed.

What makes this late disclosure even more egregious is that on the one hand Eppendorf has repeatedly stated that Nanosphere as defendant should have had its defenses fully developed and all documents produced related to such theories months ago (and in fact have sought sanctions precluding Nanosphere from relying on certain defenses), yet on the other hand, Eppendorf as plaintiff now claims it is free to come up with new theories, produce additional documents and identify new experts long after the Court ordered deadline.  In reality, based upon Eppendorf's recent "explanation" related to these new theories, it is apparent that either Eppendorf purposely delayed disclosing these theories, or has recently concocted them to gain a litigation advantage.  Importantly, we still do not know the "new" damages theory hinted at by counsel.  Apparently, Eppendorf is going to wait until it serves its expert report before it discloses this new theory on damages.[5]

Despite Eppendorf's conduct in this case, Nanosphere has always been willing to work with opposing counsel, but until now, Eppendorf was never willing to accommodate Nanosphere.  Now, with the shoe squarely on the other foot, Eppendorf cites to language in the scheduling order requiring the parties to work together to resolve "scheduling issues."  Furthermore, in an effort to justify this late disclosure, Eppendorf claims that it did not understand "liability and damages experts" to include experts related to injunctive relief.  This argument is not credible.  Indeed, it responded (albeit late and insufficiently) to an interrogatory requesting damages information with a reference to its intent to seek injunctive relief and cites to documents which apparently relate to the injunctive relief (although not evident from the documents themselves).  Additionally, Eppendorf requested injunctive relief in its complaint, if it did not "understand" damages experts to include experts relating to injunctive relief, it should have raised that issue long ago and not waited until the very last moment to disclose the theory and the new expert.

---

[4] Nanosphere is currently reviewing these newly produced documents and suspects that there are thousands of additional pages of documents that will need to be produced that are directly related to this issue.  For example, Eppendorf now relies on its RAP technology for injunctive relief.  At Mr. Bulow's deposition, he indicated that there are 12 patent families (presumably each containing hundreds if not thousands of pages) related to this technology.  Just as Eppendorf raised concern regarding patent families of the Mirkin patents, Nanosphere is entitled to review those patents related to this newly disclosed theory.

[5] This new theory will likely require Nanosphere to seek an extension to respond to the damages expert report (and potentially the additional expert on injunctive relief) since the current schedule only allows two weeks to respond.  Although Nanosphere's damage experts are diligently working on analyzing the documents related to Eppendorf's earlier disclosed damages theory, it appears that this new theory, whatever it might be, will require a new analysis of the documents produced so far in this case.  As pointed out above, what makes Eppendorf's failure to disclose these theories earlier particularly suspect is the fact that Eppendorf's counsel requested that Nanosphere supplement interrogatory responses so that they would not be "surprised" by Nanosphere's liability expert reports in light of the short turn around time for responses.  Pursuant to that request, Nanosphere served an extensive supplement related to its invalidity defenses.  Eppendorf has yet to update it responses on damages and/or injunctive relief.

The Honorable Michael M. Baylson
July 14, 2010
Page 3

Additionally, contrary to Eppendorf's claim, it is clear that Nanosphere is prejudiced by this late disclosure for several reasons. First, since Nanosphere had no knowledge of this theory we did not have the opportunity to question key Eppendorf employees on the issues related to this new theory of injunctive relief ("FDA regulatory and approval issues"). Second, as noted, Eppendorf has now produced thousands of pages of documents relating to this theory and there are likely many more yet to be produced. Third, Nanosphere was not on notice that it would need a comparable expert in this subject area. This fact is born out by Eppendorf's own statements indicating they did not even contemplate such testimony until brainstorming in late June 2010 for possible theories to support injunctive relief. Finally, Eppendorf has scheduled or is in the process of scheduling approximately 8 -10 fact depositions over the next 6 weeks as well as expert depositions. Further complicating Eppendorf's delay is Nanosphere's counsels' schedules of which Eppendorf's counsel has been aware for months. Several of the lawyers on this case, including lead counsel, have a two week trial beginning August 2, 2010. There is little room in this schedule for Nanosphere to further develop and pursue its defense to this new theory.

As has been Nanosphere's practice throughout this litigation, instead of bringing this issue to the Court's attention without an attempt to reach agreement with opposing counsel, Nanosphere offered a compromise to Eppendorf – we would not object to the recently disclosed expert and addition of new theories (and the production of thousands of documents) if the parties could agree to a 60 day extension for all discovery and dispositive motions. Eppendorf refused such a compromise. Eppendorf's counsels' stated reason for refusing the compromise is because it might preclude them from asserting a claim for prejudice related to Nanosphere's alleged delay in providing all of the documents relied upon for its 102(g) defense. Specifically, counsel stated that as the schedule currently stands, Eppendorf's experts would be required to submit a report prior to the depositions of Drs. Taton and Mucic and therefore, the expert would not be able to adequately address the 102(g) defense.[6] In response, Nanosphere suggested that it was open to the concept of supplemental expert reports at the end of discovery. Again, Eppendorf refused such a compromise—because it would then not be able to argue that it was prejudiced by the alleged tardy disclosures.[7]

Moreover, this is not a case where a short delay in the trial date has any significant market or economic impact on the Plaintiff. As Eppendorf knows, Nanosphere's total post-patent issuance sales have been less than $ 2 million. Further, Eppendorf is no longer actively marketing its own products incorporating the patented technology as it was not commercially successful and there is hardly any market penetration threat posed by a brief extension of the schedule. Hence, Eppendorf cannot articulate any prejudice that would be caused by a reasonable modification of the existing schedule.

---

[6] This response is curious given the fact that it was Eppendorf that canceled the originally scheduled depositions of Taton and Mucic prior to expert reports. Furthermore, Nanosphere has given a detailed description of its defense in a supplemental interrogatory response and has cited many of the documents it will rely upon for such defense.
[7] Counsel for Nanosphere and Eppendorf participated in a teleconference on July 13, 2010 to discuss these issues. The result of the call was each party believed a letter to the Court would be appropriate because the issues could not be resolved in the meet and confer.

The Honorable Michael M. Baylson
July 14, 2010
Page 4

Given the facts and circumstances enumerated herein, Nanosphere requests a 60 day extension on discovery and dispositive motions to accommodate the parties' discovery needs, or in the alternative, to preclude Eppendorf's reliance on any additional experts and any additional theories put forth on damages and injunctive relief coexistent with the deadlines Eppendorf's requested related to Nanosphere's 102(g) defense.

Finally, Eppendorf approached Nanosphere regarding its now communicated request to conduct the trial in Delaware in April, and Nanosphere indicated it would not object. Nanosphere also joins Eppendorf in seeking some clarity on a trial date and location.

Respectfully submitted,

*/s/Arthur G. Connolly, III*

Arthur G. Connolly, III (#2667)

cc: Clerk of the Court (by CM/ECF)
    Counsel of Record (by CM/ECF and electronic mail)

792024_1